UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GREATER CINCINNATI COALITION FOR THE HOMELESS, *et al.*, | : : : | Case No. 08-cv-603 |
| Plaintiffs, | : : | Judge Herman J. Weber Magistrate Judge Timothy S. Black |
| vs. | : : | |
| CITY OF CINCINNATI, *et al.*, | : : | |
| Defendants. | : | |

### REPORT AND RECOMMENDATION[1] THAT:
### (1) DEFENDANTS' MOTION TO DISMISS (Doc. 19) BE GRANTED; AND
### (2) THIS CASE BE CLOSED

This civil action is before the Court on Defendants' motion to dismiss (Doc. 19) and the parties' responsive memoranda (Docs. 22, 24).[2] The Court heard oral argument on the motion on March 5, 2010.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Additionally, Defendants filed a motion for leave to file recent public record information. (Doc. 31). At oral argument, Plaintiffs objected to the motion to the extent that it presented information regarding social service agencies outside of Over-the-Rhine and therefore beyond the scope of the civil action. Defendants orally withdrew the motion to the extent that it included public records relating to action outside of Over-the-Rhine. Therefore, Defendants' motion for leave to file (Doc. 31) is hereby **GRANTED** with respect to Exhibit C only, and it is **DENIED** as to the other records. The undersigned can consider public records in making a report and recommendation in this matter. *See New England Health Care Employees Pension Fund v. Ernst & Young*, 336 F.3d 495, 501 (6th Cir. 2003).

# I. BACKGROUND FACTS

On September 10, 2008, the social service agencies Plaintiffs (Greater Cincinnati Coalition for the Homeless, The Mary Magdalen House, The Drop Inn Center, The Joseph House, Inc., Cincinnati Interfaith Workers' Center, and St. Francis-St. Joseph Catholic Worker House) (collectively "Plaintiffs") filed this action under 42 U.S.C. § 1983 in response to the City's alleged deprivation of their constitutionally protected rights by the adoption of City Resolution No. 41-2008 ("the Resolution"). The Resolution was passed by the Cincinnati City Council on June 25, 2008 and is entitled:

> "RESOLUTION, submitted by Council member Bortz, DIRECTING the City Administration to adhere to the policy that social service agencies and programming shall not be concentrated in a single geographic area and shall not locate in an area that is deemed impacted; and further DIRECTING the City Manager to use his authority to the extent permitted by law, to carry out any actions necessary to adhere to such policy."

(Doc. 1, Ex. 1).

The Resolution directs City Manager Dohoney, "to the extent permitted by law," to implement a policy of avoiding undue concentrations of social service agencies and programming in a single geographic area and to restrict new social service agencies and programming in the Over-the-Rhine neighborhood of Cincinnati. (Doc. 1, Ex. 1). Plaintiff social service agencies are all located in Over-the-Rhine. Plaintiffs claim that the Resolution prohibits them from opening or expanding services and discourages the delivery of social services in the Over-the-Rhine community. Additionally, Plaintiffs allege that the proposed changes are being implemented in a way that contravenes the

City Charter which requires zoning code changes to be reviewed by the Planning Commission.

Defendants claim that the Resolution has not been implemented. Specifically, the proposed amendments to the Cincinnati Zoning Code are not yet effective because they were "referred . . . back to the Planning Commission *where they are currently undergoing further study*." (Doc. 1 at ¶ 51). Accordingly, Defendants allege that Plaintiffs' claims are not yet ripe because Defendants have not acted in a way that has adversely affected them. Additionally, Defendants allege that the complaint otherwise fails to state a claim upon which relief can be granted. (Doc. 6 at 2). *See also Consol. Rail Corp. v. City of Gahanna*, No. 95APE12-1578, 1996 Ohio App. LEXIS 1949, at *1, fn 1 (Ohio May 16, 1996). Defendants filed a motion to dismiss for these reasons. (Doc. 6).

Subsequently, Plaintiffs filed a motion for leave to file a supplemental complaint. (Doc. 14). Plaintiffs' supplemental complaint alleges that subsequent to the filing of the original complaint, Resolution 41-2008 has impacted Over-the-Rhine Community Housing ("OTRCH"), which is evidence that the Resolution has in fact been implemented.[3]

---

[3] OTRCH is not a named Plaintiff in this action. But it is a not for profit housing development corporation, and it had a $145,000,000 project evaluated by the Director of the Department of Planning and Building Department. The Director interpreted Resolution 41-2008 to apply to the OTRCH project. As a result, Plaintiffs allege that the city administration did not provide the organization with the needed certification of its project in a timely manner. Plaintiffs claim that OTRCH expended considerable time and energy securing additional funds due to the loss of funding caused by the city's delay. (Doc. 17 at ¶ 109).

The undersigned recommended that the motion to file the supplemental complaint be granted, and the District Judge ordered it. (Docs. 15, 16). As a result, since Plaintiffs' motion effectively rendered Defendants' then-pending motion to dismiss moot because the supplemental complaint directly addressed the ripeness issue, the Court declined review of the underlying claims unless and until Defendants renewed their motion to dismiss as directed at both the original and supplemental complaint. Defendants renewed their motion as such.

After the supplemental complaint was filed, the City of Cincinnati approved and funded a significant 25-unit permanent housing project in Over-the-Rhine (called the "Jimmy Heath House") for long-term homeless individuals. (Doc. 19, Ex. A); (Doc. 31, Ex. C). Still, Plaintiffs maintain that although the building was eventually approved, the outcome was delayed because the Director's attempt to enforce Resolution No. 41-2008 came at great financial cost to the housing corporation. (Doc. 17 at ¶ 109).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [her] entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).

### III.   ANALYSIS

Defendants argue that this Court lacks jurisdiction over Plaintiffs' claims because they are purely speculative and not yet ripe for consideration. If a claim is not ripe, the court lacks subject matter jurisdiction. *River City Capital v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007). Specifically, Defendants argue that the City has not acted in a way that has caused Plaintiffs any concrete injury, nor, since the challenged action instructs the City Manager to act "to the extent permitted by law," is it likely that the City will, in the future, act in a way that will unlawfully affect Plaintiffs.

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc.*

*Servs., Inc.,* 509 U.S. 43, 57 n. 18 (1993). Requiring that plaintiffs bring only ripe claims helps courts "avoid[] … premature adjudication." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49 (1967). *See also Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506 (1972). Determining whether a claim is ripe involves evaluating "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149. To be ripe for review, claims must satisfy both the fitness and the hardship components of the inquiry. *Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1362 (6th Cir. 1995). *See also, Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580 (1985).

To determine whether a claim is ripe, the Sixth Circuit weighs three factors: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings. *United Steelworkers of Am., Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 194-195 (6th Cir. 1988). *See also Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 162 (1967); *Adult Video Ass'n v. United States Dep't of Justice,* 71 F.3d 563, 568 (6th Cir. 1995).

"A case, generally, is more ripe if it involves questions of law and few contingent future events." *Currence v. City of Cincinnati*, 28 Fed. Appx. 438, 441 (6th Cir. 2002) (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)). Moreover, the ripeness analysis is relaxed for First

Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity. *Id*. at 1500.

Plaintiffs' first cause of action, void for vagueness, is a facial challenge that implicates First Amendment protections. Plaintiffs claim that the fact that the social service agencies are working in an environment where expressive activity is chilled, shows a ripe, justiciable injury. Additionally, Plaintiffs claim that they cannot operate their organizations without knowing how and whether the Resolution can be applied to their activities. Accordingly, Plaintiffs allege that delayed adjudication of this dispute is a hardship.

Plaintiffs' third, fourth, and fifth causes of action stem from the Defendants' conduct in 2008. The third cause of action alleges that Defendants' retaliatory actions violated the First Amendment by chilling political speech. The fourth cause of action alleges that there was a punitive motivation for the Resolution's passage had a punitive motivation, which demonstrates that the Resolution lacked the rational basis required by the Equal Protection Clause. The fifth cause of action also relates to harms which are complete, *i.e*., the due process requirements of notice and a hearing were not provided to Plaintiffs in 2008. The failure to provide the notice caused the injury for which Plaintiffs seek recovery.

Plaintiffs concede that their second and sixth causes of action regard future harms. However, when viewed in light of the above ripeness factors, Plaintiffs claim that these harms are also ripe for adjudication. The second cause of action alleges that

the City's classification provides no meaningful basis for distinguishing between those within and outside the class. Moreover, it cannot possibly treat those within the class in a like manner. Accordingly, Plaintiffs claim that the injuries in this regard are very likely; the hardship imposed by forestalling adjudication is substantial; and the record is sufficiently developed to permit the court to make a fair and informed decision in this regard.

Defendants argue that the Sixth Circuit's standard for ripeness in land use disputes is instructive here. The undersigned agrees. In land use contexts, the Sixth Circuit has held that "[t]wo issues inform this analysis: first, whether the initial decision-maker, i.e., administrative agency, has arrived at a definitive position on the issue that inflicts an actual, concrete injury" (the finality requirement); and, second, whether the state has denied compensation based on that injury (the remedies requirement)." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 569 (6th Cir. 2008).

The finality requirement has been applied to various constitutional claims arising out of land use disputes and requires that the "governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue." *Id.* (*quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). Finality is a prerequisite to litigation. *Grace Cmty. Church v. Lenox Township*, 544 F.3d 609 (6th Cir. 2008). The policy considerations behind the finality requirement are that:

> "First . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record . . . Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel . . . Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible . . . Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2nd Cir. 2005). Plaintiffs fail to fulfill any of these three considerations. Therefore, Plaintiffs' claims are not ripe under this analysis.

Plaintiffs maintain that because the Resolution seeks to regulate more than land use, the standards for ripeness in the land use are inapposite. Specifically, Plaintiffs allege that Resolution 41-2008 is not a comprehensive land use regulation like in *Grace* and *Insomnia v. City of Memphis*, 278 Fed. Appx. 609 (6th Cir. 2008), because the Resolution is partially directed at charitable social service programming, which is broader than mere land control and because it does not create any procedural requirements of notice, hearing, or appeal, and its application will not generate a record or offer options for variances. Additionally, Plaintiffs claim that the Resolution directs the City Manager and his agents to improvise his or her way to the stated goal of preventing concentration of social service agencies and programming without

providing the procedural protections available in the existing zoning laws to protect the rights of property owners, and, therefore, imposing a finality requirement is incorrect because it is precisely the absence of a process and the absence of any clear standards for that process that is at issue here.

In support of their position, Plaintiffs rely on the Eleventh Circuit decision in *Little v. City of North Miami*, 805 F.2d 962 (11th Cir. 1986) (*See also* Doc. 8 at 10) and the Eighth Circuit decision in *Neighborhood Enter., Inc. v. City of St. Louis*, 540 F.3d 882 (8th Cir. 2008). (Doc. 8 at 11). These cases are distinguishable from the instant case. In *Little*, the City of Miami resolution, like the Cincinnati resolution, "represents little more than the City Council's opinion" and, therefore, was not "a regulation of a general and permanent nature . . . enforceable as a local law." 805 F.2d at 966-97. The Eleventh Circuit affirmed the trial court's dismissal on that point.[4]

In *Neighborhood Enter., Inc*., the Land Clearance for Redevelopment Authority's ("LCRA") executive director was authorized "to take any and all other necessary and proper actions to effectuate the intent of the Resolution and Ordinance."

---

[4] On a different point, the Eleventh Circuit concluded that since the City of Miami had decided that appellant [a lawyer who had filed civil lawsuits] was guilty of culpable conduct and decided to publicly censure him as punishment (*Id*. at 967-68), and since a municipality "may not retaliate against an individual [who files lawsuits] because of that person's legitimate use of the court" (*Id*. at 968), that the lawyer had stated a First Amendment retaliation cause of action. These allegations in *Little* are materially different from Plaintiffs' allegations in the instant case. There are no factually sufficient allegations in the case at bar that the City of Cincinnati decided that a person is "guilty of culpable conduct" and has "publicly censured" that person in retaliation for exercising First Amendment conduct.

*Id*. at 884. This language does not expressly state that such action need be lawful. Moreover, in that case, the LCRA had already denied a sign permit pursuant to the Resolution.

In the instant case, no social service agency has yet to be deprived of a constitutionally protected right. Moreover, the Resolution at issue is not an ordinance and does not have binding legal effect. The Resolution merely instructs the City Manager to act in the future "as permitted by law" and his proposals are pending at the Cincinnati Planning Commission and "currently undergoing further study." (Doc. 1 at ¶ 51).

Plaintiffs' argument that their claims are ripe presume that a policy directive to the City Manager to prospectively address land use density concerns "to the extent permitted by law" is somehow concrete and imminent enough to be justiciable. However, Plaintiffs do not cite any case law supporting their proposition that a resolution by the legislature to the executive branch to address land use concerns "to the extent permitted by law" may be the subject of a federal court civil rights lawsuit.

In sum, Plaintiffs' claims are both hypothetical and speculative, and they do not meet the finality requirement. Therefore, the claims are not ripe, and the Court lacks subject matter jurisdiction. *River City Capital v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007).

## VI. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (Doc. 19) be **GRANTED**, and this case be **CLOSED**.


Date:  April 7, 2010                    s/ Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GREATER CINCINNATI COALITION FOR THE HOMELESS, *et al.*, | : : : | Case No. 08-cv-603 |
| Plaintiffs, | : : | Judge Herman J. Weber Magistrate Judge Timothy S. Black |
| vs. | : : | |
| CITY OF CINCINNATI., *et al.*, | : : | |
| Defendants. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).